*799 OPINION OF THE COURT
Arthur M. Schack, J.
The key questions before the court are: whether or not the existence of a Real Property Actions and Proceedings Law article 7-A administrator, to receive and administer the rent moneys for a multiple dwelling, must be disclosed in a title report as an “encumbrance” on a property; and must a title report list an expired notice of pendency with respect to the appointment of an article 7-A administrator for a property.
Plaintiff moves, pursuant to CPLR 3212, for summary judgment against defendants and payment of $202,136.83, the title policy coverage, in damages. Defendants oppose, arguing that the appointment of an article 7-A administrator is not an encumbrance and the expired notice of pendency was not required to be reported because it is null and void. Defendants cross-move, pursuant to CPLR 3212, for summary judgment and dismissal of plaintiffs action on the grounds that: plaintiffs claims are specifically excluded by the title policy; no title insurance coverage was given for possession of the premises by an article 7-A administrator; and plaintiffs claim is untimely and prejudicial to defendants. The existence of an article 7-A administrator, to collect rents and administer a multiple dwelling, might have a great impact on the value of a property and its market price but by itself does not affect the marketability of title for a building. Defendants are correct in that: the appointment of an article 7-A administrator is not an encumbrance; a title report does not have to list an expired notice of pendency; and plaintiffs claim is untimely and prejudicial to defendants. Therefore, the court denies plaintiffs motion for summary judgment and grants defendants’ cross motion for summary judgment and dismissal of the instant action.
Background
According to the affidavit in support of plaintiffs motion by Mayer Kohn, a member of plaintiff LLC, plaintiff became interested in purchasing 44 Morgan Avenue, Brooklyn, New York (the property) in April 2004 and ordered a title report from defendant Judicial Title Insurance Agency, LLC, agent for defendant Fidelity National Title Insurance Company, for the property. The title report never stated that an article 7-A administrator was appointed for the premises. However, the title report listed 80 emergency repair liens, almost 400 building violations in a 19-page printout, and outstanding real estate *800 taxes back to the last quarter of 1990 (motion, exhibit C, re-dated and recertified title report).
Plaintiff, on June 22, 2004, executed a bare-bones contract, without any riders, with the prior owner to purchase the property for $25,000 cash and the assumption of $100,000 in liens (motion, exhibit A, contract of sale). No lawyers are listed in the form contract. The contract closed six days later, on June 28, 2004 (motion, exhibit B, deed and City Register recording and endorsement cover page). At the closing, plaintiff received an owner’s policy of title insurance for $202,136.83 from defendant Fidelity. It should be noted that the contract of sale looks like the legal equivalent of a shipwreck. It appears to be a hurried document with a few scribbled entries in the blanks of a form contract of sale. This is not an attack on the contract’s legality, since it passes legal muster, but the poor quality it exudes on its face leads the court to believe that this rush job reflected the intent of plaintiff to “flip” the property for a quick “buck.”
Defendant Fidelity, at the June 28, 2004 closing, issued a title insurance policy (motion, exhibit E) to plaintiff, insuring against all encumbrances against title. Defendant Judicial, Fidelity’s agent, billed $7,874 for the title search, title insurance policy and transfer taxes ($2,920 to the purchaser and $4,954 to the seller). Mr. Kohn alleges, in paragraph 7 of his affidavit in support of plaintiffs motion, that “[a]t the closing, I paid Judicial the sum of $7,874.00 which represented the cost of the title search as well as obtaining a title insurance policy.” The $4,954 charged to the seller was for transfer taxes and recording the deed. Judicial’s bill (motion, exhibit D), does not state who paid the title company charges and has blank lines for checks received from the buyer and seller. Further, plaintiff has failed to present any documentary evidence that it paid the full $7,874 in title charges, despite Mr. Kohn’s sworn statement. The June 22, 2004 contract of sale, in its boilerplate paragraphs 14 and 15, states that the seller is responsible for the payment of the real property transfer taxes and the recording of the deed ($4,954).
Mr. Kohn alleges, in paragraph 10 of his affidavit in support of plaintiffs motion, that he learned of the existence of the article 7-A administrator approximately one month subsequent to the closing, when
“I went to the subject premises together with my contractor in order to commence rehabilitation and renovation to the premises. At said time I noticed *801 that there were individuals doing work at the premises and I inquired of them as to the reason why the[y] were working at the property.”
Mr. Kohn, in paragraph 11, then states that the workmen were present at the property at the request of the article 7-A administrator. The court can only speculate as to why a purchaser waits until approximately one month after the closing to visit the property.
Mr. Kohn claims, in paragraph 14 of his affidavit in support of plaintiffs motion, that he retained his present counsel to investigate the appointment of the article 7-A administrator for the property. Counsel, through the use of an abstract corporation, discovered that on February 9, 1998 a notice of pendency was filed in Civil Court, Kings County, Housing Part, index No. HP5094/98, Matter of Marisol Santiago, Mario Drummond, Beatriz Umanzor, Vidalina Camacho, Martha Moreno, for the appointment of an article 7-A administrator for the property (motion, exhibit F). It is undisputed that the notice of pendency lapsed in 2001 and became a nullity.
Meanwhile, Mr. Kohn, in paragraph 17 of his affidavit in support of the motion, claims that the In Rem Division of the New York City Department of Finance (DOF) notified him in August 2004 that he had until October 14, 2005 to pay approximately $400,000 in outstanding taxes and emergency repair liens. He states, in paragraph 18,
“Upon my obtaining information that a 7A Administrator had been appointed, I attempted to resolve the matter with the 7A Administrator but none of my events were successful. Accordingly, on October 14, 2005, the mandatory period of redemption expired and upon information and belief, the City of New York took title to the subject property.”
These “events” between August 2004 and October 14, 2005 have significant bearing on the instant matter. Plaintiff, in October 2004, utilizing different counsel, moved to intervene in the article 7-A proceeding (cross motion, exhibit B). By a November 5, 2004 so-ordered stipulation, plaintiff was allowed to intervene (cross motion, exhibit C). In a March 29, 2005 order in the article 7-A proceeding, the Housing Court authorized the article 7-A administrator to borrow additional monies, but then vacated it on April 14, 2005 (cross motion, exhibit D) because plaintiff had commenced, on April 5, 2005, a Kings County Supreme Court action, Zev Cohen LLC v City of New *802 York, New York City Dept. of Hous. Preservation & Dev. & Michael Rockford, In His Capacity as 7A Administrator, index No. 10104/05. In the order to show cause which accompanied this plenary action (cross motion, exhibit E), plaintiff argued three points: the appointment of the article 7-A administrator is void against plaintiff, a purchaser for value, because there was no valid notice of pendency; the subject premises are not subject to rent stabilization because it has been substantially rehabilitated; and equity and judicial economy require that the former tenants not be permitted to reoccupy the premises pending resolution of this matter. On April 20, 2005, plaintiffs order to show cause was denied without prejudice with leave to renew in the Civil Court, Housing Part (cross motion, exhibit G). In the Housing Part, the court issued a June 16, 2005 order (cross motion, exhibit H), noting that plaintiff had stipulated in writing to an adjournment for leave to cross-move for affirmative relief. However, the court noted that plaintiff inexplicably failed to comply with its own agreed-to deadline and therefore the court granted the article 7-A administrator’s request to borrow additional funds unopposed. In the interim, on June 14, 2005, the City of New York obtained a judgment of foreclosure and sale in the in rem tax proceeding, which it recorded on June 20, 2006 (cross motion, exhibit I).
Nearly eight months later, after having defaulted in the article 7-A proceeding, having watched the redemption period in the in rem proceeding expire, and letting the City of New York obtain a judgment of foreclosure and subsequent sale, plaintiff made its claim upon defendant Fidelity. Plaintiffs attorney, in a February 2, 2006 letter to Fidelity (motion, exhibit G), demanded that Fidelity pay plaintiff the full amount of the title policy. Fidelity, on March 7, 2006, denied plaintiffs claim (motion, exhibit H). Among the reasons for its denial, Fidelity noted that: the notice of pendency in the article 7-A proceeding was long expired and a nullity; that plaintiffs claim was untimely; and that the policy specifically excluded the rights of tenants and persons in possession (the article 7-A administrator). Plaintiff, by letter dated March 13, 2006, requested Fidelity to reconsider its position (motion, exhibit I). Fidelity, in response, by letter dated March 23, 2006, stated that its determination was final (cross motion, exhibit I). Plaintiff then commenced the instant action.
*803 Summary Judgment Standard
The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case. (See Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957].) Failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers. (Matter of Redemption Church of Christ of Apostolic Faith v Williams, 84 AD2d 648, 649 [3d Dept 1981]; Greenberg v Manlon Realty, 43 AD2d 968, 969 [2d Dept 1974]; Winegrad v New York Univ. Med. Ctr, 64 NY2d 851 [1985].)
CPLR 3212 (b) requires that for a court to grant summary judgment the court must determine if the movant’s papers justify holding as a matter of law “that the cause of action or defense has no merit.” The evidence submitted in support of the movant must be viewed in the light most favorable to the nonmoving party. (Marine Midland Bank v Dino & Artie's Automatic Transmission Co., 168 AD2d 610 [2d Dept 1990].) Summary judgment shall be granted only where there are no issues of material fact and the evidence requires the court to direct judgment in favor of the movant as a matter of law. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].)
Discussion
In viewing the evidence submitted, by plaintiffs in favor of their motion for summary judgment and by defendants in their cross motion for summary judgment and dismissal of the instant action, in the light most favorable to the nonmoving party the court finds the absence of triable issues of material fact.
RPAPL 769 (1) provides for “[a] special proceeding by tenants of a dwelling in the city of New York or the counties of Nassau, Suffolk, Rockland and Westchester for a judgment directing the deposit of rents into court and their use for the purpose of remedying conditions dangerous to life, health or safety.” RPAPL 778 (1) authorizes the court appointment of an administrator, also known as an article 7-A administrator, with the right to “receive and administer the rent moneys or security deposited with him subject to the court’s direction.” (See Matter of Schactman v State Div. of Hous. & Community Renewal, Off. of Rent Admin., 143 AD2d 53 [1st Dept 1988].)
*804 Insurance Law § 1113 (a) (18) states that “ ‘[t]itle insurance,’ means insuring owners of, and other persons lawfully interested in, real property and chattels real against loss by reason of defective titles and encumbrances and insuring the correctness of searches for all instruments, liens or charges affecting the title to such property” (emphasis added). Black’s Law Dictionary 547 (7th ed 1999) defines an encumbrance as “[a] claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest,” and it defines a lien as “[a] legal right or interest that a creditor has in another’s property, lasting usu. until a debt or duty that it secures is satisfied” (at 933). The instant title policy (motion, exhibit E) states that:
“SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY . . . insures as of the Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of: . . .
“2. Any defect in or lien or encumbrance on the title.”
The appointment of an article 7-A administrator deals with a statutory managing agent, charged with the duty to collect rents and improve the property. It is not a judicial lien charging the land with a debt. The appointment of an article 7-A administrator is not a “defect in or lien or encumbrance on the title.”
While the appointment of an article 7-A administrator does create a special lien, it is a lien that is not required to be listed in a title report. The article 7-A administrator may borrow money from the New York City Department of Housing Preservation and Development (HPD) for repairs. The Court of Appeals in Rosenbaum v City of New York (96 NY2d 468, 473 [2001]) noted that prior to 1974 the City filed mechanic’s liens to protect its interests, but this proved inadequate. The court then instructs:
“To afford the City greater protection, the City Council enacted section 27-2144, which changed the status of its lien from a mechanic’s lien to a super-priority lien that ‘shall have a priority over all other liens and encumbrances on the premises except for the lien of taxes and assessment’ (see, § 27-2144 [b]; *805 see also, Bagwell, New York City ‘Super Liens,’ NYLJ, Aug. 9, 1999, at SI). Moreover, the enactment takes into account a concern expressed by the title insurance industry over the prospect of liens that would not be revealed in a title search. Responsive to this point, the legislation requires the City to place prospective good-faith purchasers on notice of forthcoming super-priority liens by filing purchase or work orders in the building-by-building index in HPD’s offices * . . .
“*Even after the City enacted the present super-lien provision under section 27-2144, article 7-A liens under the RPAPL continued to hold the status of mechanics’ liens. In 1985, 11 years after section 27-2144’s enactment, the State Legislature amended the RPAPL to give 7-A liens ‘super-priority’ status (L 1985, ch 456).” (Emphasis added.)
If plaintiff, prior to closing, had exercised its necessary due diligence, it would have learned of the article 7-A administrator’s existence by inspecting the property and checking HPD’s building-by-building index.
Further, plaintiff lost sight of the fact that a title report is issued for the benefit of the title company, not necessarily for the party who ordered the title search. Defendant Fidelity did not produce a title abstract designed to inform plaintiff of the status of the property’s title. To the extent that plaintiff claims it relied on the title report and would not have purchased the property if the title report had reveled the existence of the 7-A administrator, its reliance, as a matter of law, is misplaced. The Court in Citibank v Chicago Tit. Ins. Co. (214 AD2d 212, 219 [1st Dept 1995]) instructed that
“given the nature of the coverage and the limited life of the commitment, . . . the purpose of Chicago Title’s title search was to enable it to discover known title defects with the view of having them corrected before the policy went into effect or excluding them from the scope of its coverage.”
Citibank did not commission any searches and paid for none. Chicago Title never issued a “title search” or “abstract of title.” It issued only its “Commitment for Title Insurance” and the “American Title Association Standard Loan Policy,”
“both of which listed the title defects primarily it was excepting from coverage. That search was made for its benefit — to exclude the risks it would not *806 cover — not for the benefit of Citibank ... We recognize, of course, that lenders and buyers alike customarily rely on a title insurer’s title search, which enables them to decide whether to cure the defect and conclude the transaction or proceed no further . . . That circumstance, however, does not, absent some other commitment from the insurer, render the search an independent representation as to title, which survives delivery of the policy and gives rise to a cause of action in negligence or misrepresentation. What the search does, depending on the schedule of exceptions that survive the policy’s issuance, is define the scope of coverage with respect to known defects. Unknown defects, unless otherwise excluded, are, of course, covered” (id. [emphasis added]).
The instant title insurance policy, in schedule B, states, “This policy does not insure against loss or damage . . . which arise by reason of: 1. Rights of tenants or persons in possession, if any” (emphasis added). The article 7-A administrator is clearly a “person in possession,” even if only to collect the rents and administer the property. (See Herbil Holding Co. v Commonwealth Land Tit. Ins. Co., 183 AD2d 219, 226 [2d Dept 1992].)
With respect to the expired notice of pendency, plaintiff argues that defendants are in breach of their contractual obligations under the title policy in that they failed to identify in the title report the expired notice of pendency, and thus the corresponding article 7-A proceeding. The notice of pendency in the article 7-A proceeding, filed on February 9, 1998, expired by statute, CPLR 6513, three years later, on February 8, 2001. Mr. Kohn, in his affidavit in support of the motion, at paragraph 15, concedes that “[i]t would appear that said Notice of Pendency was allowed to lapse and was not extended three years after the date of filing.”
Moreover, in plaintiffs April 5, 2005 order to show cause in its action against the City of New York, Zev Cohen LLC v City of New York, New York City Dept. of Hous. Preservation & Dev. & Michael Rochford, In His Capacity as 7A Administrator, index No. 10104/05, plaintiffs then counsel, in paragraph 13 of her affirmation in support of the order to show cause (cross motion, exhibit E), argued correctly:
“By operation of law, a notice of pendency expires if not renewed. Strict compliance with statutory *807 requirements is a condition precedent to a valid notice of pendency. When a notice of pendency expires or otherwise becomes invalid for failure to comply with statute, the notice of pendency is a nullity, with no effect on subsequent purchasers, including those with actual knowledge of pending litigation or actual knowledge of the notice of pendency when it was still valid. DaSilva v. Musso, 76 NY2d 436 (1990); Skoler v. Rimberg, 20 AD2d 580 (2d Dept 1963); McVicker v. Sarma, 163 AD2d 721 (3d Dept 1990).”
Plaintiff now asserts the exact opposite of what it had previously argued in court, and states that it was incumbent upon the defendants to have disclosed the expired notice of pendency, and that defendants have breached their contract for failing to have disclosed and addressed the same, even though they knew that the expired notice of pendency was of no effect. Defendants were not required to disclose an expired notice of pendency, as it was a nullity. The Court of Appeals instructed, in Matter of Sakow (97 NY2d 436, 442 [2002]), that, “[f]or practical purposes, there is no distinction between the effect of an expired or cancelled notice of pendency — both are void.” (See Robbins v Goldstein, 32 AD2d 1047 [2d Dept 1969]; Horowitz v Griggs, 2 AD3d 404 [2d Dept 2003].)
Defendants are entitled to summary judgment on their cross motion because as previously noted the title policy excluded the “rights of tenants or persons in possession.” The article 7-A administrator is a person in possession. It defies belief that plaintiff was unaware of the article 7-A administrator and his repair work until approximately one month after the closing, unless plaintiff failed to exercise proper due diligence.
Further, even if plaintiff is correct in its contentions, defendants are prejudiced by plaintiffs untimely notice of claim. In the title policy (cross motion, exhibit A), in a section entitled “Conditions and Stipulations,” which conveniently was not provided to the court by plaintiff in its exhibit E of the motion, section 3 states:
“NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT:
“The insured shall notify the Company promptly in writing (i) in case of any litigation . . . , (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate of interest, as insured, and which might cause loss or damage for which the Company *808 may be liable by virtue of this policy, or (iii) if title to the state or interest, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required, provided, however that failure to notify the Company shall in case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.” (Emphasis added.)
Plaintiff, by its own admission, became aware of the article 7-A administrator in July 2004. As outlined above, plaintiff intervened in the article 7-A proceeding and commenced its own unsuccessful action against the City of New York. Not until after plaintiff, for unexplained reasons, defaulted in the article 7-A proceeding and failed to redeem the property in the in rem tax foreclosure proceeding by the City of New York, did plaintiff notify Fidelity in February 2006 of its claim. Plaintiff, without ever providing timely notice to Fidelity, comes before this court in a belated attempt to saddle defendants with a purported obligation that neither Fidelity nor Judicial had a meaningful opportunity to investigate, litigate or defend, and, in any event, does not exist. Such relief cannot be countenanced.
Conclusion
Accordingly, it is ordered that plaintiffs motion for summary judgment and other relief, pursuant to CPLR 3212, is denied, and it is further ordered that defendants’ cross motion, pursuant to CPLR 3212, for summary judgment and dismissal of the instant action is granted.