■ HAROLD ROSENBAUM, Appellant, v CITY OF NEW YORK et al., Respondents. [806 NYS2d 543]—

Order and judgment, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered June 14, 2004 and June 29, 2004, respectively, which dismissed plaintiff's cause of action for slander of title, reversed, on the law, without costs, the judgment vacated and the complaint reinstated.

On August 31, 1993, plaintiff purchased an apartment building at 31-33 Mt. Hope Place in the Bronx. In November of the same year, plaintiff and the City entered into an in rem agreement, and plaintiff paid $64,000 to discharge all existing liens for real estate taxes, water, sewer, rent and emergency property repairs. However, prior to plaintiff's purchase of the building, the City had made additional repairs to the property, at its expense, and had not included those costs in the in rem agreement. The repairs were overseen by a court-appointed 7-A Administrator and were financed by a loan of $160,000 from defendant Department of Housing Preservation and Development (HPD).[1] Plaintiff had no knowledge of these repairs or the loan.

In March 1994, HPD sent plaintiff a letter advising him that he was responsible for the $160,000 loan, and that the property was subject to liens being recorded against it. HPD warned that it would commence "enforcement of said liens, which may include a levy on all rents as well as a foreclosure action." HPD filed a statement of account with the City Collector for $160,000,

---

1. Real Property Actions and Proceedings Law article 7-A provides a legal means of remedying dangerous conditions in multi-dwelling apartment buildings. Upon a finding that a dangerous condition exists, a court is authorized to appoint an Administrator to oversee rehabilitation of the building. The 7-A Administrator can borrow money from HPD to finance the repairs. RPAPL 778 allows the City to secure these loans with liens against the subject buildings.

and on May 28, 1994, the City Collector asserted liens against the building in that amount.

On August 18, 1994, less than 90 days after the filing of the May 28 liens, plaintiff's attorney wrote a letter to an attorney for HPD. The letter identified the subject property, 31-33 Mt. Hope Place, and it gave the date that plaintiff purchased the property. It also recited that a title company had insured title to the property only after plaintiff entered into an in rem agreement with the City, by which he satisfied "all charges that might be due."

With respect to the subsequent $160,000 liens, that letter stated:

"Clearly there is no legal basis for these liens. I explained this to you and to date no one has provided any reason for the City's failure to follow the law and yet *to slander Mr. Rosenbaum's title by placing these liens on the property almost one year after title passed.*

"*Unless these liens are removed forthwith then Mr. Rosenbaum may lose his current sale and be substantially damaged.* If an action is brought due to City's unlawful refusal to remove the illegal liens, the owner is entitled not only to costs but legal fees as well. I hope this will not be necessary" (emphasis supplied).

On October 14, 1994, plaintiff and his attorney met with five individuals from HPD, including its Assistant Commissioner. That same day, plaintiff's attorney sent another letter to the same attorney at HPD to whom the August 18 letter was sent, summarizing the parties' positions. The October 14 letter concluded: "I shall deem this to be the City of New York's and your department's complete position of this matter. . . . If after you have received this and the law, you still do not vacate these clearly improper and unenforceable liens from this property on or before 10/18/94, then I will have no choice but to direct my client to commence an action not only to discharge same, but for all damages, including counsel fees and punitive damages for the City's punitive refusal to comply with the law."

There was no response to this letter, and on October 21, 1994, plaintiff commenced this suit. He pleaded two causes of action: one, that the liens were illegal; and two, that they constituted slander of title. On December 16, 1994, the City started a separate action to foreclose on the liens.[2] On January 6, 1995, plaintiff served a formal notice of claim with the City Comptroller. The City then served its answer on or about January 17, 1995.

---

2. This City's foreclosure action was subsequently withdrawn.

Plaintiff and the City both moved for summary judgment. Eventually, in 2001, the Court of Appeals granted plaintiff summary judgment discharging the liens (96 NY2d 468 [2001]). It held that because HPD did not provide plaintiff with notice of its liens, and plaintiff was a "good faith" purchaser who took title without knowledge thereof, the liens were not retroactively enforceable against him (*id.* at 474). However, the Court remanded for a trial on the claim for slander of title.

Plaintiff and the City again moved for summary judgment, and the IAS court denied both the motion and the cross motion. This Court affirmed, holding that there were unresolved factual issues as to whether the liens were reasonably calculated to cause harm and as to plaintiff's damages (5 AD3d 154 [2004]). On April 26, 2004, the date set for trial, the City moved to dismiss plaintiff's action, arguing for the first time that plaintiff failed to file a timely notice of claim. In the order appealed, the IAS court granted the City's motion. It held that as plaintiff did not serve either the Comptroller or Corporation Counsel, there was "a fatal defect mandating the dismissal of the action." It also concluded that the claim for slander of title accrued at the time a prospective sale was lost because of the cloud on the title. Further, the IAS Court said: "[g]iving plaintiff every possible benefit of the doubt as to the information available to the City at the time the notice of claim was filed, and even for a year after, plaintiff did not serve sufficient notice on the City of his claim for slander of title in a timely fashion." We reverse.

The City takes issue with plaintiff's assertion that the August 18 letter satisfied his obligation to serve a notice of claim, arguing that the letter does not satisfy the requirements of General Municipal Law § 50-e (2). The City also contends that the letter did not comply with the "manner of service requirements" set forth in General Municipal Law § 50-e (3) because it was sent by regular mail to an attorney at HPD, rather than to Corporation Counsel or the Comptroller. Finally, the City claims that the letter was premature and that the supplemental notice of claim served on the Comptroller was either untimely or premature, based upon the position that plaintiff's cause of action accrued on the date that a potential sale of property was lost.

General Municipal Law § 50-e (2), which governs the form and contents of a notice of claim, provides: "The notice shall be in writing, sworn to by or on behalf of the claimant, and shall set forth: (1) the name and post-office address of each claimant and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim

arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable . . . ."

The August 18 letter was not sworn to by plaintiff, and was drafted by his attorney. However, the letter provided HPD with all of the facts pertinent to his claim, including the address of the property, and that title to it had been slandered due to the $160,000 liens improperly recorded by defendant HPD on May 28, 1994 (*see Montana v Incorporated Vil. of Lynbrook,* 23 AD2d 585 [1965] [letter which did not meet the technical requirements of General Municipal Law § 50-e (2) sufficed to serve as valid notice of claim]; *accord Mahoney v Town of Oyster Bay,* 71 AD2d 879 [1979]; *Melisi v Central School Dist. No. 1,* 25 AD2d 54 [1966]). Certainly, defendants were not prejudiced by any failure to strictly comply with the statute's dictates regarding "form of notice." Further, plaintiff's subsequent meetings with HPD attorneys and the course of the ensuing litigation gave defendants all necessary information under General Municipal Law § 50-e to investigate and defend. The specific nature of plaintiff's cause of action is vital to our interpretation and application of the notice of claim statute. This is not the type of claim where the facts are exclusively within the knowledge of plaintiff, or where a condition exists which would require the City to conduct a timely investigation. Rather, defendant HPD made the underlying loans which are the subject of liens it itself had also created and recorded. As it was HPD that later attempted to collect on its liens, the City, through its agency, had access to most of the information it needed to assert its defense to plaintiff's claim for slander of title (*see Abbot v City of New York,* 271 AD2d 364 [1st Dept 2000] [untimely notice of claim deemed sufficient where City, through HPD, had timely knowledge of the facts underlying petitioner's claim]).

The City next challenges whether the service of the August 18 letter satisfied the statute. It argues that mailing a letter to an attorney at HPD rather than to the Comptroller or Corporation Counsel is a fatal defect. General Municipal Law § 50-e (3) (a), the section governing manner of service, provides: "(a) The notice shall be served on the public corporation against which the claim is made by delivering a copy thereof personally, or by registered or certified mail, to the person designated by law as one to whom a summons in an action in the supreme court issued against such corporation may be delivered, *or to an attorney regularly engaged in representing such public corporation*" (emphasis added).

HPD is an agency of the City, and counsel for HPD are "attorney[s] regularly engaged in representing" the City. Thus, the

mailing of the August 18 letter to the attorney at HPD handling the very liens at issue clearly satisfied the service requirements of General Municipal Law § 50-e (3) (a) (*see Losada v Liberty Lines Tr.,* 155 AD2d 337 [1st Dept 1989] [letter to corporate general counsel sufficient under General Municipal Law § 50-e because such counsel was regularly engaged in representing the County in actions arising out of bus accidents]; *accord Gallagher v Liberty Lines Tr.,* 211 AD2d 440 [1st Dept 1995] [same]; *cf. Scantlebury v New York City Health & Hosps. Corp.,* 4 NY3d 606 [2005] [service on Comptroller insufficient to constitute service on Health and Hospitals Corp., which is a separate entity]).

The purpose of the notice of claim requirement is to enable the public corporation, here the City of New York, to investigate the claim and to obtain and preserve evidence promptly. Courts have consistently held that the notice of claim statute, General Municipal Law § 50-e: "should be applied flexibly so as to balance two countervailing interests: on the one hand, protecting municipal defendants from stale or frivolous claims, and on the other hand, ensuring that a meritorious case is not dismissed for a ministerial error . . . General Municipal Law § 50-e was not meant as a sword to cut down honest claims, but merely as a shield to protect municipalities against spurious ones" (*Lomax v New York City Health & Hosps. Corp.,* 262 AD2d 2, 4 [1st Dept 1999] [citations and internal quotation marks omitted]).

Further, General Municipal Law § 50-e (3) (c) excuses defects in the manner of service of a notice of claim in certain circumstances, that is: "(c) [i]f the notice is served within the period specified by this section, but in a manner not in compliance with the provisions of this subdivision, the service shall be valid if the public corporation against which the claim is made demands that the claimant or any other person interested in the claim be examined in regard to it, or if the notice is actually received by a proper person within the time specified by this section, and the public corporation fail to return the notice, specifying the defect in the manner of service, within thirty days after the notice is received." Because of the nature of plaintiff's claim and the extent of communication among all of the parties, plaintiff's August 18, 1994 letter, notifying counsel at HPD of the alleged slander of title, satisfied the requirements of General Municipal Law § 50-e (*see Losada v Liberty Lines Tr., supra*).

Finally, the City contends that the August 18 letter is deficient, because, at the time it was written, plaintiff had no actionable claim for slander of title. The City argues because plaintiff commenced the action on October 14, 1994, and it filed

and served the Comptroller with a notice of claim on January 6, 1995, the formal notice of claim could only be timely if plaintiff lost a sale of property within the nine days preceding October 14, 1994. Since a sale of the property was lost, at the earliest, when the purported buyer did a tax search on July 21, 1994, defendants assert that the January notice of claim was untimely. In the alternative, based upon the prospective purchaser's affidavit that he waited a year after this action was filed before determining not to purchase the property, defendants assert that the January 1995 notice of claim was premature. Because plaintiff's claim accrued when the liens were recorded, and the August 18 letter served as a valid notice of claim in the circumstances, we reject these arguments.

The elements of a cause of action for slander of title are: a communication (1) falsely casting doubt on the validity of complainant's title; (2) reasonably calculated to cause harm; and (3) resulting in special damages (*Brown v Bethlehem Terrace Assoc.,* 136 AD2d 222 [1988]). "The gist of the action is false disparagement of title resulting in impairment of vendibility" (44 NY Jur 2d, Defamation and Privacy § 260).

Plaintiff's cause of action for slander of title accrued on May 28, 1994, the date the HPD recorded $160,000 liens impairing the vendibility of the property (*105 E. Second St. Assoc. v Bobrow,* 175 AD2d 746 [1991]; *see also Ferran v Belawa,* 241 AD2d 841, 844 [1997]; *Lampert v Edelman,* 24 AD2d 562, 563 [1965]). Those liens were based upon repair work done prior to plaintiff's purchase, and were ultimately found unenforceable. Thus, as of the date of their recording, the value of plaintiff's property was immediately diminished by at least $160,000.

The City cites *Hanbidge v Hunt* (183 AD2d 700 [1992]), in support of the argument that plaintiff's claim did not accrue until plaintiff lost a prospective sale of the property. However, *Hanbidge* is distinguishable on its facts. In that case, defendant filed an easement limiting access to plaintiff's property. Plaintiff did not find out about the easement until three years after it was filed, when a prospective purchaser refused to enter into a contract of sale. Plaintiff brought the action for slander of title, and defendant asserted that the claim was barred by the applicable statute of limitations. The Second Department rejected the contention that plaintiff's claim was untimely, holding that plaintiff's claim did not accrue until he was made aware of the easement and suffered damages by the lost sale (*id.* at 701). The City relies on the *Hanbidge* court's statement that the slander of title claim only accrued in that case only upon a showing of "a tangible economic loss" due to the easement. Here, however,

plaintiff suffered a tangible $160,000 diminution in the value of his property at the time the liens were recorded. Concur—Mazzarelli, J.P., Andrias, Ellerin and Gonzalez, JJ.

McGuire, J., concurs in a separate memorandum as follows: Putting aside the issue of the timeliness of the August 18 letter as a notice of claim, the City's sole contention is that the letter cannot be considered a notice of claim because it was mailed not to the Corporation Counsel but to Department of Housing Preservation and Development's (HPD) deputy counsel. Far from otherwise arguing that it would be prejudiced by considering the August 18 letter as a notice of claim, the City urges that "the issue of prejudice is irrelevant" with respect to defects in the manner of service of a notice of claim. Although the City is correct that, with exceptions set forth in General Municipal Law § 50-e (3) (c) that are not relevant here, defects in the manner of service of a notice of claim cannot be excused, the City is wrong in contending that there was such a defect with respect to the August 18 letter.

The controlling statute requires that a notice of claim be served on the public corporation against which the claim is made and specifies that a copy of the notice must be delivered (be it personally or by registered or certified mail) "to the person designated by law as one to whom a summons in an action in the supreme court issued against such corporation may be delivered, or *to an attorney regularly engaged in representing such public corporation*" (General Municipal Law § 50-e [3] [a] [emphasis added]).

In essence, the City's argument is that HPD's deputy counsel is not an attorney "regularly engaged in representing" the City because he had "no authority to represent the City in general, or to settle claims against the City." This argument is not persuasive, for nothing in the statute states or suggests that the attorney regularly engaged in representing the public corporation must have authority to represent the corporation "in general" or to "settle claims against the corporation." Under settled principles of statutory construction, the City's attempt to read those words into the statute must be rejected (*see Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382, 394 [1995]).

Moreover, particularly in smaller municipalities, private attorneys not uncommonly are "regularly engaged in representing" municipalities. These attorneys, presumably, do not generally have settlement authority, and they may regularly represent agencies or subunits of the municipality as opposed to the municipality itself. If the City's position were accepted, the

statutory alternative method of service (on an attorney "regularly engaged in representing such public corporation") would be curtailed significantly if not eliminated.*

I do not disagree with the majority's statement of the purpose of General Municipal Law § 50-e or that defects in the manner of service can be excused under certain circumstances specified in General Municipal Law § 50-e (3) (c). The provisions of General Municipal Law § 50-e (3) (c), however, are not relevant to this appeal, and a particular notice that satisfied every purpose of the statute would nonetheless be invalid if—assuming the inapplicability of General Municipal Law § 50-e (3) (c)—not served in accordance with General Municipal Law § 50-e (3) (a).

Finally, I agree with the majority both that plaintiff's cause of action for slander of title accrued on May 28, 1994, and that the August 18 letter thus was timely.

---

* I express no opinion on the issue of whether a notice of claim could be served on an attorney for an agency of the City when the agency in question has nothing to do with the underlying claim.