OPINION OF THE COURT
Anthony J. Cutrona, S.
Introduction
In this action to judicially wind up the affairs of a limited liability company, the plaintiff moves for an order declaring the company dissolved. The defendant moves for leave to amend her answer to assert a cause of action for slander of title.
Background
Charlie Alston (Alston or the decedent), the decedent herein, and Daryl Sealy (Sealy) were investors in real estate. They entered into an operating agreement on October 28, 1997, to create a limited liability company under New York’s Limited Liability Company Law called Clifton LLC (Clifton) to invest in real estate. Alston and Sealy each owned 50% of Clifton. In August 1999, Clifton bought two units in a commercial condominium located at 446 Myrtle Avenue (the Myrtle Avenue Units). Alston rented one unit and used the other for his business office.
The Turnover Proceeding
Alston died on December 10, 2006. At the time of the death, there was approximately $356,000 in Clifton’s business account. Shortly after Alston’s death, Sealy withdrew $173,000 from the account. Gloria Alston was appointed administrator of Alston’s estate on February 7, 2007. The administrator brought a proceeding in this court to direct Sealy to return the $173,000 to Clifton’s account.
The petition alleged that the decedent and Sealy were signatories on the Clifton corporate account at Citibank. The administrator alleged that Sealy had ceased doing business with Alston for the last 10 years and that the decedent “inadvertently” left his name on the Clifton account. She alleged that the *269 decedent “inexplicably” deposited $350,000 into the Clifton account that Alston received upon the sale of a piece of real property he owned in his own name. After Alston’s death, Sealy withdrew $173,000 from the Clifton account and deposited it into his personal account. She asked that Sealy be directed to restore the funds to Clifton’s account. Pending a hearing, the Court froze the Clifton account and enjoined Sealy from transferring or encumbering property that Sealy owned in his own name at 570 Decatur Street, Brooklyn, New York.
Sealy filed an answer in which he claimed that, in the fall of 2006, Alston agreed to deposit a sum of money into Clifton to pay for the rentals Alston received from the rental unit and the rental value of the Unit he used in his business. Sealy asserted that he was entitled to 50% of the proceeds. Sealy later amended his answer to add two counterclaims. The first was for a declaration that he was a 50% owner of Clifton. The second was for the value of the decedent’s use of one of the Myrtle Avenue Units for his personal business. This proceeding is still in discovery.
The Dissolution Proceeding
On May 8, 2008, Sealy filed a summons and complaint in Supreme Court, asking for a partition of Clifton’s property or, in the alternative, sale of the Myrtle Avenue Units by a referee and division of the proceeds between himself and the Alston estate. On the same day, he filed a lis pendens on the Myrtle Avenue Units.
The administrator moved to dismiss the action for lack of capacity and for failure to state a cause of action. She also asked that the court vacate the lis pendens. Sealy cross-moved to amend his complaint to add causes of action to judicially wind up the affairs of Clifton and to have the court appoint a receiver or liquidating trustee for that purpose. In his affidavit in support, Sealy claimed that he was frozen out of the business in late 2000. Although Alston cut him out of the business, Sealy claimed that he and Alston continued to have a business relationship. Sealy alleged that he demanded an accounting and distribution of Clifton’s funds, but Alston refused. Upon Alston’s death, Clifton was dissolved under the terms of the operating agreement unless the surviving member consented to continue Clifton’s activities. Sealy stated that he had not and did not consent to continue the business so that Clifton was dissolved and he was entitled to half of its assets.
*270 The court denied the administrator’s motion to dismiss for lack of standing and denied the motion to dismiss for failure to state a cause of action, without prejudice to renewing the motion after discovery was completed. The court granted Sealy’s cross motion. The administrator appealed.
On November 11, 2008, the Supreme Court transferred Sealy’s action to this court, to be heard in conjunction with the administrator’s turnover proceeding. On December 9, 2008, Sealy filed his amended complaint. The amended complaint repeated the original cause of action for partition. The second cause of action was a declaration that Clifton was dissolved upon Alston’s death pursuant to the operating agreement. The third cause of action was for an accounting of the rents and profits of the Myrtle Avenue Units.
The administrator filed her answer in November 2009. She denied that Sealy was a member of Clifton and owned a 50% interest of it. She repeated her denials that Sealy had a right to partition Clifton’s property. As for the second cause of action, she denied that Clifton was dissolved by the terms of its operating agreement or that Sealy was the sole surviving member of Clifton as defined in the operating agreement. As for the third cause of action, the administrator admitted that Alston had been involved in the day-to-day operations of Clifton and that Alston collected all of the rents and profits from the Myrtle Avenue Units. However, she denied that Sealy was without knowledge of the rents and profits collected, or the amounts due him under the operating agreement.
After the action was transferred to this court, the administrator moved to dismiss the cause of action for partition on the ground that it failed to state a cause of action. She argued that since the amended complaint superceded the original complaint, she could challenge the validity of this cause of action anew. Based on the prior decision of the Supreme Court, this court denied the motion to dismiss.
On December 8, 2009, the Appellate Division, Second Department, reversed the decision of Supreme Court denying the administrator’s motion to dismiss the cause of action for partition and to cancel the lis pendens. The Appellate Division held that the Myrtle Avenue Units were owned by Clifton. Sealy’s position as a member of Clifton did not give him an interest in Clifton’s real property that would support his claim for partition. Since this was the only claim upon which the lis pendens was issued, the lis pendens was cancelled. However, the Appel *271 late Division affirmed that part of the Supreme Court’s decision that granted Sealy leave to amend the complaint to add the new causes of action. (Sealy v Clifton, LLC, 68 AD3d 846 [2d Dept 2009].)
Sealy now moves for a determination that Clifton is dissolved and to have this court wind down Clifton and direct the administrator to account for the administration of Clifton. Sealy alleges that since Alston’s death, the administrator has been managing Clifton and is in sole control of the books and records. The administrator denies Sealy’s standing to seek dissolution and claims that, even if Sealy did have standing, his motion is barred by the statute of limitations and laches. The administrator cross-moves for leave to amend her answer to assert a counterclaim for slander of title.
Inasmuch as Sealy’s motion for a determination that the LLC was dissolved was based upon evidence that could be considered in a motion for summary judgment, the court gave notice to the parties that the court was treating the motion as one for summary judgment and gave the parties time to file additional papers they wished the court to consider. (CPLR 3211 [d].) The parties filed additional affidavits pursuant to the notice.
Discussion
A. Sealy’s Motion for Dissolution and an Accounting
Turning first to Sealy’s motion for an order winding up the corporation, the motion to declare Clifton dissolved and for an accounting is, in effect, a motion for summary judgment on Sealy’s second and third causes of action. Since both Sealy and the administrator have submitted affidavits and affirmations based on the facts to support their respective positions, the court treats Sealy’s motion as one motion for summary judgment. (CPLR 3211 [c].)
Summary judgment is a drastic remedy that will only be awarded where there is no triable issue of fact. (See Barclay v Denckla, 182 AD2d 658 [2d Dept 1992].) The party seeking summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form to demonstrate the absence of any material issues of fact. (See Phillips v Kantor & Co., 31 NY2d 307 [1972]; Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].) The failure to do so requires denial of the motion, *272 regardless of the insufficiency of the opposing papers. (See Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].)
When the movant has made a prima facie case, the burden of going forward shifts to the party opposing summary judgment to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact. (See Zuckerman v City of New York, 49 NY2d 557 [1980].) Summary judgment is a drastic remedy which requires that the party opposing the motion be accorded every favorable inference and issues of credibility may not be determined on the motion but must await the trial. (See F. Garofalo Elec. Co. v New York Univ., 300 AD2d 186 [1st Dept 2002].)
The Limited Liability Company Law was enacted by the Legislature in 1994. (L 1994, ch 576.) A limited liability company is a hybrid business entity, combining the tax aspects of a partnership with the limited liability of a corporation. There are two basic principles underlying the Limited Liability Company Law. The first principle is that its members are permitted broad flexibility in structuring the limited liability company pursuant to an operating agreement. The second principle is that the provisions of the Limited Liability Company Law provide default procedures for a limited liability company, which apply unless the operating agreement clearly provides otherwise. (See Matter of Spires v Lighthouse Solutions, LLC, 4 Misc 3d 428, 433 [Sup Ct, Monroe County 2004].)
Article 14.3 of the agreement provides that Clifton shall be dissolved:
“Upon the death, retirement, resignation, expulsion or bankruptcy of a Member or the occurrences of any other event which terminates the continued membership of a Member in the Company, unless the remaining Members, within ninety (90) days after the event or occurrence, unanimously elected to continue the business of the Company pursuant to the terms of this Agreement.”
Since Sealy is the sole remaining member of Clifton, and has not consented to continue Clifton’s activities after Alston’s death, Sealy has established a prima facie case for Clifton’s dissolution. (Matter of Spires v Lighthouse Solutions LLC, supra.)
The burden now shifts to the administrator to establish, by admissible evidence, that dissolution is not warranted. The administrator first argues that Sealy is not entitled to seek the dissolution of Clifton because he repudiated the operating agree *273 ment. She claims that Sealy opposed the purchase of the Myrtle Avenue Units. When the decedent proceeded to buy them for Clifton, Sealy refused to participate in the purchase and subsequently quit. She alleges that since that time, Sealy has not participated or contributed in any way to Clifton’s activities.
However, under article 11 of the operating agreement, a member may withdraw pursuant to the provisions of the LLC. Prior to the amendment of the Limited Liability Company Law in 1999, a member could withdraw from the limited liability company only upon either an event enumerated in the operating agreement or with the consent of at least two-thirds in interest of the members, excluding the member who desired to withdraw. If consent was not given, the member could withdraw on six months’ notice. (Limited Liability Company Law § 606.) The administrator has presented no evidence that Sealy withdrew pursuant to Limited Liability Company Law § 606.
The administrator next argues that even if Sealy was a member of Clifton, his motion for dissolution is barred by the statute of limitations. She argues that since Sealy was frozen out or cut out of the business in 2000, his cause of action for dissolution arose at that time, citing Matter of Gunzberg v Art-Lloyd Metal Prods. Corp. (112 AD2d 423 [2d Dept 1985]) and Matter of Topper v Park Sheraton Pharm. (107 Misc 2d 25 [Sup Ct, NY County 1980]). Therefore, Sealy’s claim for dissolution is barred by New York’s statute of limitations, whether three years (CPLR 214) or six years (CPLR 213).
Sealy denies that he was frozen out of Clifton’s business in 2000. He claims that his assertion that he was frozen out of Clifton’s affairs in his petition was a term of art. He now claims that he continued his business relationship with Alston. His only disagreement with Alston was over Alston’s refusal to account for the rents and profits from the Myrtle Avenue Units. However, the court need not address this issue because, under the Limited Liability Company Law, even if he was frozen or cut out of Clifton’s management in 2000, this would not give him a cause of action for dissolution.
The administrator relies on cases arising under Business Corporation Law and Partnership Law for her assertion that Sealy had the right to seek dissolution of Clifton when Alston “froze” him out of the management of Clifton. (See Gunzberg v Art-Lloyd Metal Products Corp., supra; Topper v Park Sheraton, supra.) Where such a right exists, the cause of action for dis *274 solution based on such conduct accrues in the year the oppressive conduct occurred. (See Kaufman v Cohen, 307 AD2d 113 [1st Dept 2003] [six-year statute of limitations for cause of action against a partner for breach of fiduciary duty].)
The Limited Liability Company Law does not provide an equivalent right for members of a limited liability company. Instead, Limited Liability Company Law § 702 authorizes judicial dissolution only upon a showing that it is not reasonably practicable to carry on the business in accordance with the operating agreement.
The difference between the rights of members of limited liability companies and minority shareholders of business corporations is exemplified by the decision of the Appellate Division, Second Department in Matter of 1545 Ocean Ave., LLC (72 AD3d 121 [2d Dept 2010]). In 1545 Ocean Ave., LLC, the operating agreement provided that the limited liability company would be managed by a manager designated by each of the two members of the company. One of the managers refused to let the other manager participate in the management of the company. This caused the excluded manager to withdraw and its principal member to seek dissolution of the company.
The Supreme Court granted the petition to dissolve the company. The Appellate Division reversed. It found that the offending manager’s conduct could constitute oppressive action justifying dissolution under New York law governing corporations for oppressive actions against members (see Business Corporation Law §§ 1104, 1104-a) or under partnership law (see Partnership Law § 62). However, the court held that Limited Liability Company Law § 702 did not incorporate an equivalent right to dissolve a limited liability company for oppressive conduct towards the non-managing members.
Under the Limited Liability Company Law, the only basis for an excluded member to state a valid cause of action for judicial dissolution of the limited liability corporation is to establish that the conduct of the other members results in a situation in which it is not reasonably practical to continue the company’s business. (Limited Liability Company Law § 702.)
“Thus, the existence and character [of corporations and partnerships] are statutorily dissimilar as are the laws relating to their dissolution (compare Business Corporation Law art 11; Partnership Law §§ 62, 63; Limited Liability Company Law § 702). Indeed, it was found to be improper to apply *275 partnership dissolution standards to a cause for dissolution of a limited liability company (see Matter of Spires v Lighthouse Solutions, LLC, 4 Misc 3d at 431.)” (72 AD3d at 128.)
In Widewaters Herkimer Co., LLC v Aiello (28 AD3d 1107 [4th Dept 2006]), the majority member commenced an action against two minority members to acquire their membership interest in the company for failure to make required capital contributions. The defendants answered and asserted a counterclaim to dissolve the company for breach of their fiduciary duty to the minority members and unlawful or oppressive conduct toward them. The trial court dismissed this counterclaim for failure to state a cause of action for dissolution under the Limited Liability Company Law. On appeal, the Appellate Division, Fourth Department, affirmed the dismissal of the counterclaim.
In Matter of Horning v Horning Constr., LLC (12 Misc 3d 402 [Sup Ct, Monroe County 2006]), the court held that the requirements for a judicial dissolution pursuant to Limited Liability Company Law § 702 were more stringent than those under the Business Corporation Law or Partnership Law. “Dissolution in the absence of an operating agreement can only be had upon satisfaction of the standard of section 702, i.e., ‘whenever it is not reasonably practicable to carry on the business.’ ” (Id. at 408.)
In the instant case, the evidence is that Alston carried on the business of Clifton until the day he died. The Limited Liability Company Law provides that, unless provided otherwise in the operating agreement, management of the company is vested in its members. (Limited Liability Company Law § 401.) In such cases, “any such member exercising such management powers or responsibilities shall be deemed to be a manager” and “shall have and be subject to all of the duties and liabilities of a manager.” (Limited Liability Company Law § 401 [b].) Therefore, Sealy had no cause of action to seek the dissolution of Clifton prior to Alston’s death in 2006. Based on the above, Sealy’s cause of action for dissolution is not barred by the statute of limitations.
The administrator next argues that dissolution is an extreme remedy, which should not be granted unless absolutely required, citing Matter of 1545 Ocean Ave., LLC. As discussed above, that case involved an action to dissolve a limited liability company on the ground of oppressive conduct. Sealy bases his action on *276 the operating agreement, which expressly provides for dissolution under the facts at bar.
The administrator argues that Sealy’s motion is barred by the doctrine of laches. Laches is an equitable doctrine. To establish laches, a party must show:
“(1) conduct by an offending party giving rise to the situation complained of, (2) delay by the complainant in asserting his or her claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief, and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant.” (Cohen v Krantz, 227 AD2d 581, 582 [2d Dept 1996].)
Mere delay in asserting one’s rights will not establish laches, without actual prejudice to the party raising the defense. (Glenesk v Guidance Realty Corp., 36 AD2d 852 [2d Dept 1971].)
The administrator claims that Sealy’s delay in waiting until Alston’s death to seek dissolution is a ground to apply the doctrine of laches. However, it was only on Alston’s death that Sealy had a basis to seek dissolution of Clifton. The administrator next argues that the fact that Alston took out a mortgage to buy the Myrtle Avenue Units establishes prejudice, citing White v Priester (78 AD3d 1169 [2d Dept 2010]). In that case, the defendant was appointed guardian of the property of her mother. Four years later, the daughter moved for court approval of the transfer of her mother’s property to herself, alleging the transfer would benefit her mother for Medicaid and estate planning purposes. The court granted the motion and the daughter transferred the property to herself in 2002. In reliance of her ownership of the property, she maintained it at her own expense and incurred a mortgage obligation of over $700,000.
After the mother died, plaintiff, as administrator of the mother’s estate, sued to vacate the transfer. Plaintiff claimed that she did not know of the transfer until 2008, when the daughter attempted to sell the property. However, plaintiff admitted that she and other family members took no action to enforce any rights they might have had to the property so that the daughter could live in the premises.
The daughter moved, for summary judgment dismissing the claims. The Supreme Court denied the motion. On appeal, the Appellate Division, Second Department, reversed. It found that *277 the distributees knew that the defendant resided on the property and took no legal steps to secure their interest in the property and left the daughter’s occupancy undisturbed. The Court found that this “plaintiffs deliberate inaction, together with the detriment to the [the daughter] caused by the delay, warrant [ed] application of the doctrine of laches.” (78 AD3d at 1171.)
In the instant case, however, Alston purchased Myrtle Avenue Units in Clifton’s name. The purchaser’s checks to pay the amounts due at closing were from the Clifton account. While the administrator has submitted evidence that Alston paid off the mortgage on the Units, it is not inequitable to hold that Clifton is the owner. The administrator’s right to recoup moneys contributed by Alston to purchase the Myrtle Avenue Units and to pay off the mortgage may be determined in the dissolution and accounting proceeding.
Finally, the administrator argues that summary judgment is premature because discovery is not complete. Summary judgment will be denied where a party has not had sufficient opportunity for disclosure. (See Korson v Preferred Mut. Ins. Co., 39 AD3d 483 [2d Dept 2007].) However, the party seeking to defeat a motion for summary judgment must establish that the discovery sought may raise an issue of fact. (Cruz v Otis El. Co., 238 AD2d 540 [2d Dept 1997].)
The mere hope that evidence may exist will not defeat a motion for summary judgment. (Simpson v City of New York Tr. Auth., 44 AD3d 930 [2d Dept 2007].) Nor will conclusory or unsubstantiated assertions that further discovery is necessary defeat a motion for summary judgment. (See Lambert v Bracco, 18 AD3d 619 [2d Dept 2005].)
The administrator claims that discovery is necessary concerning: (1) the source of the funds Sealy used to pay his initial capital contribution to Clifton; (2) Sealy’s actions as a member of Clifton; (3) whether he recognized any profits or losses from his investment in Clifton on his tax return; and (4) what Sealy did with the money withdrawn from Clifton’s bank account.
None of these items are relevant to Sealy’s motion for dissolution and an accounting. Sealy’s payment of the initial capital contribution is established by article 6 of the operating agreement, signed by both parties. Whether Sealy conducted any business as a member of Clifton, or received any benefit is not relevant to his right to such relief as a member of Clifton. Finally, Sealy’s withdrawal from the Clifton bank account is the subject of the related turnover proceeding.
*278 The Administrator’s Cross Motion
The administrator cross-moves for leave to amend her answer to assert a counterclaim for slander of title. As CPLR 3025 (b) provides, leave to amend a pleading should be freely granted absent a showing of prejudice resulting from the delay and provided that the proposed amendment is not plainly lacking in merit. (See Monello v Sottile, Megna, 281 AD2d 463 [2d Dept 2001]; Fidelity Holdings v Marom, 276 AD2d 468 [2d Dept 2000]; Tarantini v Russo Realty Corp., 273 AD2d 458 [2d Dept 2000].) The motion must be accompanied by an affidavit showing the merit of the proposed amendment and by an affidavit showing reasonable excuse for the delay in seeking leave to amend the pleading. (Alexander v Seligman, 131 AD2d 528 [2d Dept 1987]; Schroeder v Brooklyn Hosp., 119 AD2d 564 [2d Dept 1986], lv denied 68 NY2d 603 [1986].)
“Although leave to amend a pleading should be freely given absent prejudice to the opposing party (see CPLR 3025 [b]; Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959 [1983]; Charleson v City of Long Beach, 297 AD2d 777 [2002]), leave should be denied if the proposed amendment is palpably insufficient as a matter of law or is totally devoid of merit (see AYW Networks v Teleport Communications Group, 309 AD2d 724 [2003]; Leszczynski v Kelly & McGlynn, 281 AD2d 519 [2001]).” (Ruddock v Boland Rentals, 5 AD3d 368, 370 [2d Dept 2004].)
Indeed, “a court must examine the underlying merit of the proposed claims, since to do otherwise would be wasteful of judicial resources.” (Toscano v Toscano, 302 AD2d 453, 454 [2d Dept 2003], quoting Morgan v Prospect Park Assoc. Holdings, 251 AD2d 306, 306 [2d Dept 1998].) The issue for the court is whether the proposed amendment is “patently devoid of merit.” (Gitlin v Chirinkin, 60 AD3d 901, 902 [2d Dept 2009].)
A claim for defamation of title must plead: (1) a communication falsely casting doubt on the validity of complainant’s title, (2) reasonably calculated to cause harm, and (3) resulting special damages. (Fink v Shawangunk Conservancy, Inc., 15 AD3d 754, 756 [3d Dept 2005], quoting Brown v Bethlehem Terrace Assoc., 136 AD2d 222, 224 [3d Dept 1988]; Hirschhorn v Town of Harrison, 210 AD2d 587 [3d Dept 1994]; Hanbidge v Hunt, 183 AD2d 700 [2d Dept 1992].)
In her affidavit in support of the cross motion, the administrator alleged that on April 8, 2008, Clifton entered into a contract *279 to sell the property for $813,750. On May 5, 2008, Sealy filed a lis pendens against the interests of the corporation. As a result, the sale was cancelled and the estate refunded the 10% deposit. Since then, the real estate market has declined, so that the property had declined in value by $110,000.
Sealy opposes the motion on the ground that the proposed cause of action fails to state a valid cause of action. He bases this on his assertion that the administrator’s allegations that the lis pendens was filed maliciously and caused the sale to be cancelled was conclusory and lacking any factual evidence. Sealy denied knowledge of the proposed sale, and argues that, as a result, he could not, as a matter of law, be found guilty of any maliciousness that resulted in the loss of the sale.
However, the filing of a false lis pendens is sufficient to base a claim for slander of title, provided special damages are asserted.
“ ‘There is no doubt that the act of wrongfully filing of record an unfounded claim to the property of another is actionable as slander of title’ (Annotation, Recording of Instrument Purporting to Affect Title as Slander of Title, 39 ALR2d 840, 842). ‘The wrongful filing for record of a document which casts a cloud upon another’s title to or interest in realty is clearly such an act of publication as to give rise to an action for slander of title, if provable damages result’ (Annotation, Recording of Instrument Purporting to Affect Title as Slander of Title, 39 ALR2d 840, 843; see also, Brown v Bethlehem Terrace Assoc., 136 AD2d 222).” (Hanbidge v Hunt, 183 AD2d 700, 701 [2d Dept 1992]; see also Rosenbaum v City of New York, 24 AD3d 349 [1st Dept 2005], revd on other grounds 8 NY3d 1 [2006].)
Sealy argues that the filing of a lis pendens does not slander title, since there was no attempt to deny that Clifton owned the property. However, the administrator’s ability to sell the property was challenged. The administrator alleges that this caused the sale to collapse. A cause of action for slander of title does not arise until there is a loss of sale. (Rosenbaum v City of New York, 8 NY3d 1, 12 [2006].)
Conclusion
Based on the above, Sealy’s motion for summary judgment is granted to the extent that the court finds that Clifton is dissolved pursuant to article 14.3 of the Operating Agreement. The *280 administrator is directed to account for Alston’s administration of Clifton, and her administration of Clifton after Alston’s death, within 60 days from receiving notice of entry of this decision and order. To the extent not granted, the motion is denied. The administrator’s cross motion for leave to amend her answer to file a counterclaim is granted.