■ F. Garofalo Electric Co., Inc., Appellant, v New York University, Respondent. [754 NYS2d 227] —Order, Supreme Court, New York County (Karla Moskowitz, J.), entered July 5, 2001, which granted defendant's motion for summary judgment dismissing plaintiff's first and second causes of action, granted defendant summary judgment as to liability on its counterclaims for construction costs, and referred to a special referee the issue of how much of such alleged costs is properly allocable to plaintiff, and order, same court and Justice, entered March 16, 2002, which granted plaintiff's motion for renewal of the prior motion and, upon renewal, adhered to its original decision, unanimously modified, on the law, defendant's motion as to the first cause of action and the counterclaims denied, and otherwise affirmed, without costs.

This case, on its second appearance before this Court, involves a dispute between plaintiff, F. Garofalo Electric Co., Inc. (FGE), an electrical contractor, and New York University (NYU), which hired FGE to perform electrical work on the construction of NYU's Skirball Institute of Biomolecular Medicine and Residential Tower (the Project). An agreement, dated November 20, 1990, between FGE and NYU required FGE to work under the direction and supervision of Morse Diesel International (MDI), the construction manager for the Project, and gave MDI exclusive control over the construction scheduling. Among other things, the contract required FGE to revise its schedules, to add additional workers and/or overtime labor as requested by MDI, and to continue work and maintain the schedule set by MDI, even in the event a dispute should arise regarding the work. The contract also permitted MDI to schedule other work at the same time and in the same area as FGE's work.

Construction began in the latter part of 1990, but progress on the electrical systems soon fell behind schedule. FGE contended that the delays were caused by, among other things, MDI's mismanagement and lack of coordination with other contractors, and vandalism and theft resulting from NYU's failure to provide adequate security, which required FGE to redo work it had already completed. While acknowledging various reasons for the delays, NYU argues that the many of the scheduling setbacks were attributable to "the insufficiency of [FGE's] workforce."

According to NYU, in order to address the problem, MDI negotiated an agreement with FGE in which certain "milestones" were set for the completion of the work. MDI purportedly sent a letter, dated April 7, 1993, to FGE memorializing

the allegedly agreed-upon milestones. The letter set a deadline of May 7, 1993, for completion of a "total working," "fully operational" security system and all other electrical work. The letter also provided for "payment to FGE of $40,000 per week upon completion of specified milestones for a period of six weeks commencing March 22, 1993 through April 30, 1993," as well as for payment to FGE of half the retainage held by NYU throughout the Project and certain outstanding requisitions by specified dates. That letter was not signed by FGE, and FGE denies having agreed to the time limits it sets forth.

NYU soon thereafter accused FGE of failing to meet the designated milestones, and ceased tendering to FGE the $40,000 weekly milestone payments. When FGE purportedly threatened to cease work in response, NYU renewed the milestone payments. Between March and May 1993, NYU paid five of the six $40,000 milestone payments as well as FGE's outstanding February, March and April 1993 requisitions, and released over $300,000 in previously withheld retainage as further payment to FGE. However, beginning with FGE's May 1993 invoice, NYU refused to provide further payments to FGE, arguing in a July 15, 1993 letter that FGE had not timely completed the work. Between May and November 1993, MDI sent FGE a number of letters complaining about the quality of FGE's work, its failure to complete the work according to the schedule, and its failure to employ an adequate work force. In at least two of these letters, MDI demanded that FGE increase its work force and declared FGE to be in default of the contract. FGE countered that the work had been substantially performed and that the delays resulted from mismanagement, scheduling conflicts, vandalism and damage caused by others.

In July 1993, FGE commenced this action against NYU and MDI, seeking, in seven causes of action, payment of $749,581 for work performed pursuant to the contract, as well as additional damages incurred as a result of delays, and for payment for extracontractual work performed and materials provided. Defendants answered and asserted counterclaims for approximately $4 million in various costs allegedly incurred to complete or correct electrical work that FGE allegedly did not complete or perform as required by the contract. Four months later, on November 17, 1993, NYU notified FGE that it was terminating the contract.

In December 1997, NYU and MDI moved for partial summary judgment dismissing six of FGE's seven causes of action. The Supreme Court denied the motions. However, on appeal, this Court reversed, granted summary judgment dismissing

the third and fifth causes of action against NYU, FGE's claims against MDI and all third-party claims (*F. Garofalo Elec. Co. v New York Univ.*, 270 AD2d 76, *lv dismissed* 95 NY2d 825), leaving only FGE's first and second causes of action against NYU for breach of contract and to recover for certain extra work and materials, and NYU's counterclaims against FGE.

Thereafter, NYU moved for summary judgment dismissing FGE's remaining claims and for summary judgment on its own counterclaims. Supreme Court granted NYU's motion, dismissed FGE's claims against NYU, awarded summary judgment to NYU on its counterclaims, and referred the matter to a special referee to hear and report on which of the costs claimed by NYU should be allocated to FGE's alleged failure to perform under the contract. The court subsequently denied FGE's motion to reargue and granted its motion to renew, but adhered to its original determination. FGE appeals. We modify to deny summary judgment as to the first cause of action and counterclaims and remand for further proceedings.

In deciding a motion for summary judgment, the court's role is solely to determine if any triable issues exist, not to determine the merits of any such issues (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395). Because summary judgment is a drastic measure that deprives a party of its day in court, it may be granted only if no genuine triable issue of fact is presented (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851; *Ugarriza v Schmieder*, 46 NY2d 471). Moreover, the motion court should draw all reasonable inferences in favor of the nonmoving party in determining whether to grant summary judgment (*see Dauman Displays v Masturzo*, 168 AD2d 204, 205, *lv dismissed* 77 NY2d 939). If there is any doubt as to the existence of a triable issue, the motion should be denied (*see Rotuba Extruders v Ceppos*, 46 NY2d 223, 231; *Stone v Goodson*, 8 NY2d 8, 12; *DuLuc v Resnick*, 224 AD2d 210).

In granting NYU's motion for summary judgment, Supreme Court found, as a matter of law, that FGE had breached its agreement with NYU by failing to increase its workforce when ordered to do so by MDI and by not completing its work on the fire alarm and security systems according to the schedule established by the April 7, 1993 letter from MDI.* However, FGE contends that it substantially performed its obligations

* FGE's arguments that it never agreed to the time limits set forth in the April 7 letter and that, pursuant to this Court's decision in the prior appeal, MDI was without authority to alter the terms of the parties' initial agreement are unavailing. Regardless of whether it signed off on the April 7 letter, FGE agreed in its original contract with NYU that schedules would be set

under the contract months before NYU terminated the agreement, and that the record includes sufficient evidence of its substantial performance to raise genuine issues of fact precluding summary judgment. If FGE substantially performed its contractual obligations, then it would be entitled to the payment due under the contract less the cost of any correction of defects in its performance (*see Jacob & Youngs v Kent*, 230 NY 239, 241; *see also Edgewater Constr. Co. v 81 & 3 of Watertown*, 252 AD2d 951, 952, *lv denied* 92 NY2d 814; *J.C. Drywall & Accoustical Contrs. v West Shore Partners*, 187 AD2d 564). The question of whether there has been substantial performance—or a breach—is to be determined, whenever there is any doubt, by the trier of fact (*Jacob & Youngs*, 230 NY at 243; *J.C. Drywall*, 187 AD2d at 564), and only "if the inferences are certain, by the judges of the law" (*Jacob & Youngs*, 230 NY at 243).

With regard to the fire alarm and security systems—the two primary parts of FGE's work that NYU contends were not completed—FGE produced affidavits by its former president and a former employee detailing what FGE asserts constituted its substantial performance, as well as uncontroverted evidence that the fire alarm system had been inspected and approved by the New York City Fire Department, that the Buildings Department had issued a temporary certificate of occupancy for the building in May 1993, and that NYU opened the residence floors of the project for occupancy prior to terminating its contract with FGE. NYU is correct that such evidence does not establish that FGE substantially complied with the contract's requirements (*see Pettinelli Elec. Co. v William A. Berbusse, Jr., Inc.*, 25 AD2d 736). However, it is sufficient to raise material questions of fact as to whether it did—and, thus, whether it was entitled to the payment due under the contract (less any amount determined to be required to correct or complete FGE's work)—or whether it was in breach of its contractual obligations. In the face of such unresolved factual issues, it was error for the court to grant NYU's motion for summary judgment on plaintiff's breach of contract cause of action.

Similarly, it was error for the court to grant NYU summary judgment on its counterclaims, which are, in essence, the reverse of FGE's breach of contract claim. The disputed issues of fact as to whether FGE substantially performed its contractual

my MDI. Rather than a new agreement or a modification of the original one, the April 7 letter is no more than an exercise of MDI's scheduling authority committed to paper.

obligations give rise to disputed issues as to whether, as NYU claims, $4 million was required to complete work allegedly left undone by FGE or to correct work allegedly performed improperly by FGE. Indeed, the court appeared to recognize that there were unresolved issues of fact as to how substantially FGE actually performed its contractual obligations when it referred the matter of which of the expenditures claimed by NYU could appropriately be attributed to FGE's failure to perform under the contract.

However, the court properly dismissed FGE's second cause of action for money allegedly owed for extracontractual work and materials. The contract clearly required FGE to provide written "extra-work" statements, countersigned by the construction manager for each day extra work was performed, showing the name of each worker, the number of hours worked, the nature and description of the work, and the nature and quantity of materials used for the job. FGE failed to provide the necessary documentation for $117,343.13 of the $123,343.13 claimed, and NYU did not seek summary judgment with respect to the remaining $6,000. Because such documentation was a precondition to payment (see F. Garofalo Elec. Co. v New York Univ., 270 AD2d 76), NYU was entitled to summary judgment on FGE's second cause of action. Concur—Mazzarelli, J.P., Rosenberger, Rubin and Gonzalez, JJ.