| |
|---|
| **Matter of Neumann** |
| 2024 NY Slip Op 30497(U) |
| January 10, 2024 |
| Surrogate's Court, Bronx County |
| Docket Number: File No. 725P2003/D |
| Judge: Nelida Malave-Gonzalez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SURROGATE'S COURT, BRONX COUNTY

January 10, 2024


ESTATE OF ARTHUR J. NEUMANN, Deceased
File Nos.: 725P2003/D and 725P2003/E


In this bitterly contested estate, Belinda Neumann-Donnelly ("Belinda"), the decedent's niece, filed a motion seeking partial summary judgment on the remaining branch of her petition pursuant to SCPA 711 requesting that the court remove her father, Hubert G. Neumann ("Hubert") as the de facto trustee of the Appointed Neumann Descendants' Trust (ANDT), appointing a bank or trust company in his stead. She also asks that the court reinstate all the directives contained in an order dated February 5, 2019, inter alia, staying him from taking any further actions as trustee, and vacating partial modifications to said order pursuant to a stipulation and order respectively dated February 15, 2019 and May 13, 2019. Hubert opposes removal and requests to consolidate Belinda's motion with a pending proceeding seeking to judicially settle his amended intermediate account

(File No. 725P2003/E).  After several conferences were held with counsel and a member of the court's Law Department, the parties stipulated that Hubert is to continue overseeing and controlling all of the art wheresoever situated, including ANDT's own art. Accordingly, Belinda no longer seeks to remove Hubert from overseeing the ANDT art and its interests in the Neumann Collection but wants him removed from the day-to-day trust administration activities and certain investment decisions concerning ANDT. Belinda and Melissa recently retained new counsel.  A motion filed by Hubert seeking to consolidate Belinda's removal motion with the trustee's pending intermediate accounting proceeding has been held in abeyance (File No. 725P2003/E) pending determination on this motion.  The court declines to determine the summary judgment motion and directs its consolidation with the pending accounting proceeding for the reasons stated below.

Opposition to Belinda's motion was also filed by two other nieces, Belinda's sisters Melissa F. Neumann ("Melissa") and Kristina Neumann, who, along with Belinda, are the lifetime ANDT income beneficiaries, as well as the guardian ad litem representing Melissa's infant daughter Eva Neumann Crichton. Jared Donnelly, Lita N. Crichton and Lachlan N. Crichton, Belinda's and Melissa's children who were previously respectively represented by the guardians ad litem and have attained majority, and Miles Donnelly, Belinda's other adult son, have not separately

appeared or taken a position in these proceedings. All of these great nieces and nephews are discretionary income and principal beneficiaries of ANDT and its presumptive remainder persons.

In determining this motion the court reviewed, inter alia, the affidavits of Belinda, her spouse, Jeffrey Donnelly, Hubert Neumann, Kristina Neumann, Melissa Neumann, the affirmations of Judd Bernstein, John Morken, Esq., Donald Novick, Esq., Steven R. Finkelstein, Esq., affidavits of Christopher Gaillard and Darcy Katris, Esq. and the numerous exhibits thereto. Oral argument was had and the motion was marked "submitted."

**BACKGROUND**

Arthur Neumann died on August 22, 2003 without issue. His spouse predeceased. His sole distributee is his brother Hubert. Arthur's will, dated October 25, 2002, nominates Hubert as executor. The will was admitted to probate by decree and letters testamentary issued to Hubert on September 23, 2003.

Arthur's and Hubert's parents, Morton H. Neumann and Rose F. Neumann ("Morton" and "Rose"), emigrated from eastern Europe to the United States over a century ago and established Valmor, a personal products empire. During their lifetimes they purchased many paintings and other works or art from established and striving artists. Upon their deaths, Hubert assumed control of Valmor and various trusts for family members,

[* 3]

including ANDT and Hubert's separate trust, maintained the entire art collection and acquired additional works of art, all of which have greatly appreciated in value. The aggregate "Neumann Family Collection" ("the Neumann Collection"), as depicted by Hubert, is a renowned privately held art collection of 20th century art. Its value, as well as the extent of ANDT's interest in it, remains unknown. All parties herein, who have separate interests in Valmor and other family trusts that have a stake in the Neumann Collection, concede that the Neumann Collection is to remain intact and the art therein is not to be specifically ascribed to ANDT, which also owns separate artwork. Pursuant to a "so-ordered" stipulation, the identification and valuation details of the artwork in the proceedings have been redacted as potentially negatively impacting the provenance and value of the Neumann Collection and ANDT's separately owned art.

Morton executed an inter vivos trust agreement that was restated on June 30, 1980 and amended multiple times, which is referred to in the documents as the "amended paternal 1980 trust agreement" ("the Morton Trust"), which became irrevocable upon Morton's death on April 8, 1985. At that time, certain assets held by the Morton Trust were placed in a trust for Arthur's benefit, the Arthur J. Neumann Trust dated February 16, 1987 (the "Arthur Trust"), of which Hubert is the sole trustee. Upon Rose's death on May 13, 1998, a portion of the assets held during her lifetime under

the Morton Trust were also placed into the Arthur Trust. Arthur failed to exercise the power of appointment designating Hubert as trustee of the Arthur Trust during his lifetime.

However, Arthur's will exercises a limited appointment over the Arthur Trust and said trust refers to ANDT and nominated Hubert as its trustee. Accordingly, Arthur's residuary estate was technically paid to Hubert as the de facto trustee of ANDT (hereinafter "trustee") to be held in further trust for the benefit of Hubert's descendants. Arthur's will also nominates Melissa as successor trustee, with a limited power of appointment to designate a bank, trust company or Belinda to serve as co-trustee with her. Should Melissa not serve, the will nominates Belinda to serve jointly with a bank or trust company. An individual fiduciary is authorized to replace a bank or trust company serving as co-trustee with a successor corporate trustee upon ten days' notice. Commissions could not be taken with respect to the works of art and any interest in the stock of a corporation whose primary assets consist of works of art. Upon the death of all three nieces, the remaining assets and income in ANDT are to be paid to Hubert's then living grandchildren or their issue, should they fail to survive. Adopted or non- marital issue are excluded as beneficiaries. The final distributions of trust principal to Hubert's surviving grandchildren are to be paid upon their attaining the age of thirty-five, although the entire net income of the trust is

to be distributed annually to the income beneficiaries.

**BELINDA'S ARGUMENTS**

In support of removing Hubert as trustee of ANDT, Belinda notes that it is uncontroverted that Hubert controls the entire art collection for the Valmor entities, ANDT, Hubert's own trust and other family trusts as one global unit. The [redacted] valuation of the ANDT interests therein is but an estimate of its approximate relation to the value of all works of art. She asserts that Hubert believes that the total collection is priceless and the individual interests of ANDT and its beneficiaries are insignificant in comparison. When pressed, Hubert begrudgingly sells -art but not enough to retain comfortable liquidity to pay ANDT expenses or make distributions, and systematically siphons off ANDT funds for his personal benefit. For example, she alleges that he spent over $1 million of ANDT funds to acquire a fifty percent interest in a non income producing townhouse jointly owned by ANDT and the Hubert Trust and has ANDT pay half of the expenses of a full-time housekeeper at the townhouse who primarily performs personal tasks for Hubert and his present companion, Deborah Purden. Hubert pays Ms. Purden significant funds from ANDT accounts to accompany him to dinner parties and travel globally with him under the guise of promoting the Neumann Collection and overpays her for alleged art curatorial services. As an example of poor fiduciary judgment jeopardizing ANDT's assets, Hubert

wilfully refused to insure the art collection for many years. It was only after Belinda filed the removal proceeding that he obtained insurance coverage

Belinda continues that, although he had his own trust and significant personal assets, Hubert also loaned a former girlfriend $1,225,000 to purchase her own apartment from ANDT funds, of which $122,500 was interest-free. There was no promissory note evidencing the debt. The rest of the loan was held in a 30-year mortgage at a below-market interest rate. Because ANDT lacked liquidity, Hubert sold $376,058.98 in stocks held by ANDT at a loss to make the loan, noting that these stocks would have greatly appreciated in value had they continued to remain part of ANDT's portfolio. Hubert also charged ANDT for petty personal expenses such as polishing silver and cleaning bathrooms throughout the house and the cost to buy new pants in Paris because he failed to adequately pack for a trip abroad. He misappropriated significant ANDT funds to pay his personal legal fees and disbursements for himself and his girlfriend in other litigations to which neither ANDT nor Hubert as its trustee were parties. He misused his position as chief operating officer of Valmor to transfer funds to himself from Valmor, which owns assets in excess of $500 million and is indebted to ANDT for over $100,000 and committed tax fraud utilizing ANDT, placing it at grave risk by failing to distribute shares of stock in Valmor and declaring fictitious debts and loans. He depleted Rose's estate by undervaluing Valmor stock

and fraudulently transferring it to a marital trust, and delayed distributing it to Rose's own trust. Belinda urges that all of these self-serving transactions were detrimental to the interests of ANDT and its beneficiaries.

Belinda appears to have had a good relationship with Hubert prior to the death of her mother Dolores, from whom Hubert was estranged for many years. Belinda was the primary beneficiary and nominated executor of Dolores' last will and testament dated March 4, 2015, which disinherited Hubert and left modest shares to Melissa and Kristina. Hubert and Melissa mounted a probate contest in Dolores' estate, also involving Kristina, that resulted in a jury verdict in favor of Belinda. Hubert unsuccessfully attempted to enjoin the sale of a valuable painting by Dolores' estate at Sotheby's that was individually owned by Dolores by misrepresenting that it was part of the Neumann Collection. Belinda avers that as a result of the probate litigation, Hubert commenced retaliating against her in 2018, refused to make distributions from ANDT to her or for her children's education and wrongly opined that they had to first deplete their individual trusts. In contrast, Hubert made significant distributions to Melissa and Melissa's children during this time period because she sided with Hubert in the probate contest. He belatedly made several distributions for Belinda's daughter's private school tuition but does not pay for the college expenses of her two sons.

[* 8]

Belinda concludes that, although the Morton Trust directs a trustee to consider all other income and resources of a beneficiary seeking a distribution, the ANDT instrument does not require consideration of a beneficiary's financial circumstances. Significantly Article VII § 5 of the Morton Trust Instrument, which is incorporated by reference in the ANDT Instrument, directs that the use of funds for the income beneficiaries shall be given priority over the conservation of the trust estate for the benefit of the remainder beneficiaries. In contrast, Hubert is warehousing the ANDT assets and ignoring the income beneficiaries' interests.

Belinda's former attorneys corroborate that Hubert, acting in his capacity as ANDT trustee, ignored the Morton and Arthur Trust mandates that the use of funds for the income beneficiaries (Belinda, her two sisters and the grandchildren/grand nieces and nephews) should be given priority over the preservation of the trust estate for the benefit of the remainder beneficiaries. Accordingly, he is obligated to use ANDT funds for the income beneficiaries' health, education, support and maintenance, which takes precedence to preserving the Neumann Collection for the remainder beneficiaries. Notwithstanding this mandate, Hubert improperly requires consideration of a beneficiary's financial condition prior to making distributions for the purposes permitted in the ANDT instrument, but does not take financial wherewithal into consideration when making permissible

distributions to enable the purchase of art.

In 2010 Hubert improperly transferred undivided 50% interests in both the Trust art and the townhouse to ANDT and the Hubert Trust. These transfers gave Hubert, in his capacity as trustee and primary income beneficiary of the Hubert Trust, the power to veto any sales of art necessary to fund distributions to ANDT's beneficiaries. By giving himself this control, he breached his duty of loyalty and created an inherent conflict of interest. Counsel urges that in the event that Hubert is removed as trustee, Melissa should likewise be disqualified from serving as successor trustee because her animus towards Belinda exceeds Hubert's. Moreover, Hubert has separately "funneled" significant sums to her in the past several years. Melissa is undoubtedly the successor Trustee of the Hubert Trust, and she and her children are beneficiaries of Hubert's estate. Accordingly, Melissa is motivated to continue to preserve an intact Neuman Collection at Belinda's and Belinda's children's expense. In further support of allegations of Hubert's retaliation against Belinda and her family, counsel annexes exhibits concerning New York County Family Court and Criminal Court proceedings resulting in the issuance of orders of protection against Hubert.

**OPPOSITION TO REMOVAL**

Hubert counters that the Neumann Collection contains over 2,000 works owned by various Neumann family members. Approximately 60

[* 10]

to 70 percent of the art is owned by ANDT and the Hubert Trust in equal shares. As trustee of both trusts, he is obligated to maintain the entire art collection. Hubert realizes that he must "consider family first" and has never lost sight of the individual interests. Hubert denies that distributions ceased to two of Belinda's children as a result of the litigation in Dolores' estate. In fact, he spent $800,000 of his own personal assets to fund trusts for Belinda's two sons that now respectively have $324,00 and $450,000 prior to making distributions for their benefit from the ANDT. Commencing in 2020, he made annual distributions for the education of Belinda's infant daughter. There were additional distributions totaling $300,000 each to Belinda, Melissa and Kristina in 2022.

Hubert urges that he does not harbor hostility toward Belinda. While he is saddened by her rancor, his requesting financial disclosure as a predicate for distributions is to ascertain the beneficiaries' wealth in accordance with trust mandates. The petty accusations concerning charging ANDT for de minimis personal expenditures pale in comparison to the fact that Belinda and her family lived with Hubert in the townhouse rent-free for over six years and were well aware that ANDT assets paid for its acquisition and maintenance. Hubert asserts that the First Department expressly held that he is permitted as a beneficiary and trustee of the Morton Trust to live there rent-free and doing so does not constitute a distribution of income or

principal to him. The townhouse is a valuable ANDT asset and, like the artworks, has substantially increased in value. It was expressly purchased to display the Neumann Collection to auction houses, artists, art critics and historians and it engenders relationships and viewings advantageous to the ANDT beneficiaries because it cultivates demand for the artwork. His companion, Ms. Purden, was an art consultant for Morton and Rose in 1982, and has acted as a curator for Neumann Collection since the late 1990s. Her services have been indispensable in securing and increasing ANDT's assets.

The original decision not to insure the art collection was made in consultation with Belinda and her sisters who concurred that the art was secured in various locations. Instead of having to sell other rapidly appreciating art works, the saved premiums were used to purchase additional art for ANDT. In any event, all of the art is now insured. Hubert also avers that he never used ANDT funds to pay the legal fees in Dolores' probate litigation or personal legal bills. The lawsuit seeking to enjoin the sale of the painting in Dolores' estate was brought on behalf of the Neuman Collection, which includes the ANDT art.

The allegations of tax fraud concerning the sale of two works of art by ANDT that should have been ascribed to the Hubert Trust and Valmor are likewise false given that Hubert has a much greater stake in his

own trust and Valmor. In any event, Hubert always appropriately consulted with counsel and accountants when making financial decisions.

In further opposition, Hubert's attorney affirms that nothing novel has occurred since the court reinstated Hubert's powers and authority as ANDT trustee. In accordance with this court's orders, Hubert has faithfully submitted monthly reports to Belinda's counsel detailing the administration expenses of ANDT made during the prior month and notice of legal fees and sale of art. Should Hubert be suspended from making business decisions or authority to act on the day to day trust activities, ANDT and its beneficiaries will be irreparably harmed. Belinda has commenced 18 actions against Hubert and her sisters in various forums seeking similar relief. Additionally, the removal of Hubert as ANDT trustee would subvert Arthur's intent, as well as that of Rose and Morton, especially since there is no showing of misconduct that endangers ANDT. Under Hubert's helm, the ANDT assets have prodigiously appreciated in value, benefitting all beneficiaries. The potential damage to ANDT by installing a successor trustee lacking Hubert's experience and contacts would irreparably damage its rare, irreplaceable assets.

In further opposition, counsel submits an affidavit from Darcy Katris, Esq., one of Hubert's estate attorneys, that there was a delay in distributing assets from Rose's trust to the ANDT and Hubert trusts because

of tax issues. Also annexed is the affidavit of Christopher Gaillard, Chairman of an art appraisal and advisory company, confirming that because the ANDT and Hubert's Trust have different beneficiaries, Hubert prudently distributed 50% interests in the artwork owned by Rose's marital trust to each trust, ensuring that the trusts were equal in value because artworks appreciate at different rates. He also opines that all art works, whether belonging to Valmor, ANDT or the Hubert Trust, are sold at auction as part of the Neumann Collection, which enhances their value by assuring potential bidders of their quality and provenance.

Counsel notes that where there is a pending accounting proceeding, the courts are extremely reluctant to remove a fiduciary until the conclusion of the proceeding to avoid multiple tracks of litigation involving the same subject matter. Accordingly, he requests that the removal proceeding be held in abeyance pending resolution of the accounting proceeding, as it would also offer appropriate recourse to Belinda for her numerous unjustified grievances. Removal without a hearing is appropriate only when the fiduciary's misconduct is established by undisputed facts or concessions. Here, all of the facts are disputed and it is uncontroverted that all of the ANDT assets are well taken care of and secured, they have appreciated over eight times after Rose's death under Hubert's stewardship and there is no showing of harm.

[* 14]

Counsel also urges that there is no retaliation or animosity towards Belinda. In fact, she and her family occupied two floors of the Riverside Drive townhouse rent-free and Hubert distributed approximately $550,000 in cash and over $1,000,000 in art to Belinda prior to this litigation, greatly exceeding the amounts paid to Kristina and Melissa during this time period. Belinda and her husband commenced proceedings in the New York County Family and Criminal Courts against Hubert only after he requested that they leave the townhouse. In fact, Hubert had to file an eviction proceeding against Belinda and her family, and both the Family Court and Criminal Court proceedings were dismissed.

Counsel rebuts the assertion that reimbursement is appropriate only for the storage, maintenance and insurance of art. Since Arthur's will is silent on that issue, the Morton Trust Agreement controls, in that in addition to receiving reasonable compensation for services as trustee, reimbursement may be made for all proper expenses incurred in the management, protection and distribution of the trust estate, including agents' and attorneys' fees. Counsel concludes that Hubert halted distributions for Belinda's adult children because ANDT distributions are not mandatory and depend on the financial circumstances of all of Hubert's descendants. Belinda's impending wealth from her mother's estate was also taken into account, and Hubert's repeatedly asking for financial documents was not in

any way related to litigation commenced by Belinda. In any event, counsel avers that Belinda's claims are barred by the doctrines of estoppel, ratification and laches.

In further opposition, Melissa's attorney notes that there is nothing in Belinda's application supporting Hubert's removal or that Melissa should be by-passed as successor trustee despite Arthur's testamentary intent that she should serve in that capacity. Even if the application were granted, there is no other trustee who could effectively manage the complex trust assets even on a temporary basis. Should Hubert step down or be incapable of continuing to serve, Melissa is fully qualified by reason of her excellent education and experience as an active art collector and financial manager.

The guardian ad litem originally appointed for Melissa's infant daughter and a son who has since attained majority, affirms that his wards are remainder persons and have significant interests that may be affected by the relief sought herein. He urges that any change of Trustee, even on an interim basis, would wreak havoc on the Trust and the beneficiaries and a corporate or individual trustee would lack the expertise, time and willingness to deal with such a considerable and unique trust corpus. This would jeopardize his wards' substantial remainder interest in the trust and likely cause chaos in a market already affected by world events. Moreover, the

ANDT assets have grown exponentially under Hubert's stewardship, and there is no showing of fact that the trust or its assets are in danger of loss or dissipation. Finally, there is a pending accounting proceeding and should Belinda prevail in any of her allegations, monetary relief is available.

**BELINDA' S REPLY**

Belinda's former attorney affirms that after refusing to pay any distributions for years, Hubert only commenced making them in 2022 as a quid pro quo for Belinda's withdrawing a motion seeking to suspend him for all purposes. In fact, Hubert remains hostile to her. In any event, Belinda does not request consolidation, and the removal and accounting proceedings are on different time tracks.

As a fiduciary is held to a much higher standard than an ordinary litigant, a showing of self-dealing or gross misconduct, including a conflict of interest, is sufficient to warrant the suspension of a fiduciary without any additional showing of irreparable harm. Hubert has not fully complied with the court's directives. He is only permitted to pay normal trust administration expenses and give notice of any payment exceeding $10,000 within seven days and of legal fees within 72 hours. Although Hubert furnished monthly reports, he failed to timely disclose nearly $2.8 million in ANDT payments during the past three years. He recently made substantial capital improvements to the townhouse, including creating a garden. Since

Hubert only sold two works of art owned by ANDT since 2019, removing him as trustee should not interfere with ANDT's art "business."

As for self-dealing, Hubert used ANDT funds to pay his girlfriend for personal tasks such as accompanying him to parties and vacations and for his own personal legal fees in litigating against auctioning art in Dolores' estate. He also used ANDT assets to fund a loan to a former girlfriend, a portion of which was interest-free, and sold securities belonging to ANDT at a loss to fund that loan. He transferred money from Valmor to the Hubert trust at a time when Valmor owed ANDT $112,257. With respect to Melissa's suitability as a trustee, counsel notes that, despite being depicted as having a solid business background, she is in fact a medical doctor with a busy practice and is "too busy to assume the additional obligations of ANDT trustee."

**ORAL ARGUMENT**

In addition to the arguments by counsel highlighting the contentions in their documents, the guardian ad litem for Melissa's infant daughter notes that it is ANDT's remainder persons who are ultimately bearing the cost of the multitude of litigations herein and those in New York County. Hubert has grown the corpus of ANDT exponentially to his ward's benefit. Counsel notes that the loan to the girlfriend was paid in full with interest, and there was no loss to ANDT. Because it has such a

sophisticated corpus, there is no bank trust department or individual who is going to properly manage the assets and, in any event, a replacement fiduciary would seek millions of dollars in compensation for trying to do so. The guardian ad litem avers that none of the remainder persons or other income beneficiaries want the court to change the fiduciary. Separate counsel for Melissa and Kristina urge that Hubert has credibly managed ANDT, and that it is Belinda who has created the alleged hostility and does not recognize that there are other beneficiaries. In any event, counsel for Hubert and the other beneficiaries concur that there are issues of fact precluding summary judgment and there should be a full evidentiary hearing.

**DISCUSSION AND DETERMINATION**

Summary judgment cannot be granted unless it clearly appears that no material issues of fact exist (see Phillips v Joseph Kantor & Co., 31 NY2d 307 [1972]; Glick & Dolleck, Inc. v Tri-Pac Export Corp., 22 NY2d 439 [1968]). The movant must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form to demonstrate the absence of any material issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Friends of Animals, Inc. v Associated Fur Mfrs. Inc., 46 NY2d 1065 [1979]). When the movant has made out a prima facie case, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the

existence of material issues of fact (see Zuckerman v City of New York, 49 NY2d 557 [1980]).  Summary judgment is a drastic remedy which requires that the party opposing the motion be accorded every favorable inference and issues of credibility may not be determined on the motion but must await the trial (see F. Garofalo Elec. Co. v New York Univ., 300 AD2d 186 [1st Dept 2002]).

As a general rule, the testator's selection of a fiduciary must be given deference and the power of the court to remove a fiduciary chosen by the testator should be exercised only upon a clear showing of serious misconduct that endangers the welfare of the estate; it is not every breach of fiduciary duty that will warrant removal (see Matter of Duke, 87 NY2d 465, 474 [1996] citing Matter of Israel, 64 Misc 2d 1035 [Sur Ct, Nassau County 1970]; Matter of Leland, 219 NY 387 [1916]; see also Matter of Aoki, NYLJ, Apr. 19, 2023 at 7, col 3 [Sur Ct, NY County 2023]; Matter of Miller, 48 Misc 2d 815 [Sur Ct, NY County 1965]).  A potential conflict of interest between a fiduciary and a party interested in the estate does not warrant the denial of letters to or removal of, a fiduciary unless it interfered with the proper administration of the trust (see Matter of Rothman, 183 AD3d 553 [2nd Dept 2020]; Matter of Rudin, 15 AD3d 199 [1st Dept 2005]; Matter of Shaw, 186 AD2d 809 [2nd Dept 1992]).

Hubert Neumann is not only the de facto trustee of ANDT but

trustee of the Hubert Trust, President of Valmor and the sole manager of the Neumann Collection. Upon the assent of all parties, the art therein, estimated in excess of a billion dollars, is treated as one global unit and Hubert is to remain its custodian with authority to make all business decisions, inter alia, concerning its situs, maintenance, sale and acquire additional works of art. With this mandate, removal at this juncture with sharply disputed issues of fact and without a full evidentiary hearing is inappropriate (see SCPA 711, 719; Matter of Bolen, 166 AD3d 1367 [3rd Dept 2018]; Matter of Mercer 119 AD3d 689 [2nd Dept 2014]) and may cause irreparable harm to ANDT and the other family holdings. That is not to say that Hubert is not accountable for his actions concerning ANDT. There is a pending amended accounting proceeding covering the period from August 22, 2013 through December 31, 2018, a time line that covers many of the allegations raised by Belinda as to Hubert's fitness to serve as trustee. Where there are common issues of law or fact, the discovery needed is nearly the same, the parties are identical, and the interests of judicial economy and litigant resources will be served, the court may consolidate these proceedings to avoid unnecessary cost or delay (see SCPA 501 [2] [a]; Matter of Mercer, 119 AD3d at 689; Matter of Moran, 166 AD3d 1176 [3rd Dept 2018]).

Accordingly, on this state of the record, this decision constitutes

the order of the court declining to determine that branch of Belinda's summary judgment motion seeking to remove Hubert as trustee of ANDT and, sua sponte, consolidating said motion with Hubert's pending amended intermediate accounting proceeding (File No. 725P2003/E) (see SCPA 501 [2] [a]; Matter of Leyden, NYLJ, Apr. 15, 2019 at 22, col 6 [Sur Ct, NY County 2019]; Matter of Tsangaris, NYLJ, Sep. 14, 2020 at 17, col 2 [Sur Ct, Westchester County 2020]). This will afford the parties complete discovery to enable determination of removal and the extent of surcharge, if any.

The court has concerns over the lack of distributions in the trust. It was only after many conferences were held with counsel and a member of the court's Law Department that Hubert made the noted distribution to the three nieces in 2022. However, at a recent conference Hubert refused to discuss distribution whatsoever despite strong requests from Belinda's and Kristina's attorneys. It is inconceivable that a trust with these significant assets does not generate regular distributions benefitting the income beneficiaries. As counsel noted, the 2022 distributions represented a fraction of one percent of the value of the trust's assets. Although Hubert employs the mantra that he does not want to facilitate "trust babies" that is not the case here. Hubert is the beneficiary of his own substantial trust and has diligently attended to the Neumann Collection. Belinda and Melissa are highly educated with gainful careers. They also

have six children enrolled in private schools and universities and incur significant tuition costs. Kristina's attorney notes that her client is ill and needs assistance. Given these facts, it is demeaning to have to implore the trustee to make distributions. Moreover, failure to make distributions might give rise to an inference of hostility interfering with the administration of the trust (see Matter of Epstein, 202 AD3d 669 [2nd Dept 2022]). Where a discretionary power involves the ongoing exercise of judgment concerning the needs of the beneficiaries for the distribution of income or principal, the courts have appointed a co-trustee to make such decisions (see Matter of Alpert, 129 AD2d 444 [1st Dept 1987; Matter of Seidman, 58 AD2d 72 [2nd Dept 1977]; Matter of Horner, NYLJ, Mar. 21, 1996 at 29, col 3 [Sur Ct, NY County 1996]).

Counsel for the respective parties are directed to appear for a virtual conference with Laura Adams, Court Attorney-Referee to be held on the court's Teams platform at 3 p.m. on Wednesday, January 31, 2024 to address outstanding issues, schedule discovery and submissions in the accounting proceeding and discuss distributions. If the issue of distributions cannot be satisfactorily resolved, the court will consider appointing one or more co-trustees of ANDT with limited authority to effectuate the same, who may be granted additional authority to address other trust administration

24

deficiencies that might arise.            .

        The Chief Clerk shall mail a copy of this decision and order to respective counsel.

        Proceed accordingly.

_____
HON. NELIDA MALAVÉ-GONZALEZ
SURROGATE